# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**QUINTON F. ROBINSON,**

      **Plaintiff,**

**v.**                            **CASE NO:**

**MAXIMUS, INC.,**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, QUINTON F. ROBINSON, (hereinafter "Plaintiff" or "Mr. Robinson"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, MAXIMUS, INC. (hereinafter "Defendant," "MAXIMUS," or "Company") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as

1

amended, § 760.10 et seq. ("FCRA"). In addition, Plaintiff seeks to redress violations by Defendant of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

2.      As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated and retaliated against him, altered the terms, conditions, and privileges of his employment because of his race in violation of his rights under Title VII, the FCRA and the FMLA.

3.      As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer the loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.      Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a) and

the principles of pendent jurisdiction.

6.    This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.    Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.    Plaintiff is an African American male.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on his race under Title VII and the FCRA.

10.    During the period from October 2016, until July 1, 2022, Defendant employed Plaintiff.

11.    At all times material herein, Plaintiff met the definitions of

"employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII, the FCRA, and the FMLA.

13.    The Defendant is MAXIMUS, INC., a Foreign Profit Corporation with a principal place of business located at 1600 TYSONS BOULEVARD, SUITE 1400, MCLEAN, VA 22102.

14.    At all times conduct herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida.

15.    At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII, the FCRA, the FMLA.

16.    Accordingly, Defendant is liable under Title VII, the FCRA, and the FMLA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.    On October 15, 2022, Plaintiff timely dual filed a Charge of

Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, discrimination based on his race, disability, and retaliation. A true and accurate copy of Plaintiff's Charge of Discrimination, dated October 5, 2022, is attached hereto, and incorporated herein as **Exhibit "A."**

19.    On January 30, 2023, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2023-00118) against Defendant. A true and accurate copy of the EEOC's Notice of Right to Sue, dated January 30, 2023, is attached hereto, and incorporated herein as **Exhibit "B."**

20.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is also entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22.    In October 2016, Mr. Robinson began his employment with MAXIMUS as a Customer Service Representative at its call center located in Riverview, Florida.

23.    In October 2019, MAXIMUS offered Mr. Robinson a promotion to a Limited-Service Supervisor position at the Riverview Call Center. From October 2019 until May 2021, Mr. Robinson was a Limited-Service Supervisor that had applied multiple times for a Regular Full Time Supervisor position. Further, from October 2019 until late 2020, Mr. Robinson was the only African American Limited-Service Supervisor. As a Limited-Service Supervisor, Mr. Robinson should have been eligible for merit increases and a project bonus.

24.    On September 30, 2020, MAXIMUS denied Mr. Robinson both his merit increase and his project bonus.

25.    On December 9, 2020, Mr. Robinson filed an internal ethics complaint regarding the denial of both his merit increase, his project bonus, and his denial of a Regular Full Time Supervisor position.

26.    On January 21, 2021, Mr. Robinson emailed Nicole A. Frias asking for an update regarding his ethics complaint and reminding Ms. Frias

that he had previously sent her "the guidelines for the project bonus outlined by CCO and MAXIMUS but never received a reply." Mr. Robinson's email to Ms. Frias went unanswered.

27.    On February 1, 2021, Mr. Robinson received notice that MAXIMUS had performed an investigation into his ethics complaint regarding the denial of both his merit increase and project bonus and they determined that he was not eligible for either wage benefit because he had signed an offer letter to the same effect and that they had closed the investigation.

28.    The HR manager that delivered the update regarding Mr. Robinson's ethics complaint suggested that Mr. Robinson move back to a Customer Service Representative role if he was not happy with his pay as a Limited-Service Supervisor. The HR manager also suggested that Mr. Robinson reach out to the managers who interviewed him for the Regular Full Time Supervisor position about interview tips, suggesting a poor interview was the reason MAXIMUS did not offer him a Regular Full Time Supervisor position.

29.    On April 15, 2021, Mr. Robinson emailed Laura Lopez, Wesley A. Cason, Lesem Ramos, and Adryenne M. Myers requesting a Pay Equity

Analysis. Mr. Robinson let them know that he had accepted a Limited-Supervisor position in Oct. 2019 and recently applied for a Regular Full Time Supervisor position in 2021 for which he was awaiting a decision. Mr. Robinson highlighted that during the interview process for the Regular Full Time Supervisor position he raised questions regarding his current pay and asked if converted to a Regular Full Time Supervisor whether his rate of pay would change, and he was told it would not. However, Mr. Robinson learned, after speaking to other Limited-Service Supervisors that converted after him who were not bilingual and did not work after 7pm, that many, if not all, were receiving a higher salary than him. Mr. Robinson specifically asked, "I'm curious to know how this could have happened or what the process is that determines the rate of pay and requesting a pay equity analysis for this reason. This is only to ensure that I'm being treated fairly without bias and paid equitably in comparison to other LS supervisor within the site(s) here in Tampa."

30.     On April 29, 2021, Lorie A. Sherman informed Mr. Robinson that she had performed an investigation into his Pay Equity Analysis request and found that there was no discrepancy between his salary and that of the other Limited-Service Supervisors at the Riverview Call Center.

31.    On or about May 5, 2021, Mr. Robinson accepted a new position as a Regular Full Time Supervisor. However, MAXIMUS only provided Mr. Robinson with the new title and failed to provide him with any changes to his shift, site location or salary.

32.    Shortly after accepting the Regular Full Time Supervisor position, Mr. Robinson became aware that MAXIMUS had been paying him significantly less than his Caucasian co-workers who were in equal positions both as a Regular Full Time Supervisor and as a Limited-Service Supervisor. Again, Mr. Robinson requested, on several occasions, from his managers and Human Resources a Pay Equity Analysis. Furthermore, Mr. Robinson complained to MAXIMUS that he was requesting this information because he believed that he was being paid less than his Caucasian co-workers.

33.    On May 18, 2021, Mr. Robinson emailed Ms. Sherman to ask about applying for open Limited-Service positions in both Operations and the Training Department since his Regular Full Time Supervisor position did not come with any additional pay, nor a change to his schedule or site location. In this request, Mr. Robinson also asked for an update into a potential investigation into his unequal pay allegations, he did not receive a response. Despite his numerous requests for the Pay Equity Analysis,

MAXIMUS failed to produce the requested report.

34.    On July 16, 2021, Mr. Robinson emailed Tiffany R. David and Adryenne M. Myers to request a site and shift change from his current 1:30pm – 10pm shift at MAXIMUS' Riverview site to a morning shift at MAXIMUS' Net Park Site. Mr. Robinson never received a response to his request.

35.    On August 24, 2021, following MAXIMUS' repeated denial to provide Mr. Robinson with the Pay Equity Analysis and refusal to address his requests to transfer shifts and site from Riverview to Net Park, Mr. Robinson filed Charge No. 511-2021-01796 with the EEOC.

36.    On September 27, 2021, after he filed Charge No. 511-2021-01796 with the EEOC, HR Communications sent Mr. Robinson and email announcing a CCO market adjustment in which Mr. Robinson received a 33.7% market adjustment increasing his annual salary to $48,796.80 effective October 3, 2021.

37.    On October 12, 2021, Mr. Robinson received an email from Arvenita Washington Cherry, Ph.D., Senior Director of Diversity, Equity, and Inclusion – Human Resources, stating that his Pay Equity Analysis was in the process of being discussed and that his HR Representative would be

the proper person to seek the Pay Equity Analysis.

38.    On January 13, 2022, Tonya Dishon, Manager, Customer Service, CCO Operations, sent out an email asking if any supervisors would be interested in transferring to MAXIMUS' Net Park location.

39.    On January 14, 2022, Mr. Robinson replied expressing interest and stated that he had "actually requested this some time back and was denied with no explanation as to why." Again, Mr. Robinson never received a response to his request.

40.    On June 16, 2022, Andres Darnes and Luis Maga approached Mr. Robinson regarding a potential violation of the CCO Secure Floor Policy relating to Mr. Robinson possessing a cell phone in a Medium and High-Risk Level Operational Area. Mr. Robinson admitted to Mr. Darnes and Mr. Maga that he did in fact have his cell phone in his possession, but that the area he had been assigned to did not have any signage designating it as a medium or high-risk operational area. In response, Mr. Darnes and Mr. Maga told Mr. Robinson that he had nothing to worry about.

41.    On June 17, 2022, Mr. Robinson requested to take FMLA leave until June 20, 2022, utilizing intermittent FMLA leave.

42.    On Monday, June 20, 2022, Mr. Robinson received a phone call

from another employee Savannah Williams (Supervisor, Black/AA, Female) letting him know that a rumor was being circulated that he had been terminated for a Secure Floor Policy violation. Mr. Robinson let Ms. Williams know that he was unaware of what she was referring to and that he had been out on FMLA since June 17, 2022, and was set to return to work on Tuesday June 21, 2022. Mr. Robinson asked Ms. Williams who shared this rumor with her, and she stated she heard it from another supervisor, Jose Rios (Hispanic-White, Male).

43.     On June 21, 2022, Mr. Robinson returned to work from FMLA leave. Upon his return, Mr. Robinson received a message via teams from Carrol Pirant, Senior Manager, Call Center at MAXIMUS, stating that HR wanted to meet with him about an incident that occurred on June 16, 2022. Mr. Robinson met with Shona Urban, Senior Human Resources Specialist at Maximus, and Ms. Urban began to question him regarding a phone incident that occurred on June 16, 2022. Mr. Robinson shared with Ms. Urban the conversation he had with Mr. Darnes and Mr. Maga and asked if they made these accusations why they were not in the meeting. Ms. Urban claimed that Mr. Darnes was out of office and that Mr. Maga was not asked to participate. Mr. Robinson let Ms. Urban know that both Mr. Darnes and Mr. Maga told

him that he had nothing to worry about after his admission to possessing the cell phone. Additionally, Mr. Robinson let Ms. Urban know that Mr. Maga had told him that the Secure Floor Policy had been relaxed for supervisors, because they did not have access to a land line phone system at their designated workstations.

44.     On June 22, 2022, Mr. Robinson requested FMLA leave because he had tested positive for COVID. On June 30, 2022, Mr. Robinson returned to work and received a call from Ms. Pirant informing him that there would be an investigation into the June 16, 2022, secure floor violation. Following this conversation with Ms. Pirant, Mr. Robinson returned to his workstation where he was informed by two supervisors, Yvonne Walker (Black/AA, Female) and Adrian Johnson (Black/AA, Male) that Mr. Maga had shown them both emails from Mr. Darnes and Ms. David asking Mr. Maga why he didn't report the secure floor violation on June 16, 2022. Ms. Walker and Mr. Johnson shared with Mr. Robinson that the emails from Ms. David encouraged and pressured Mr. Maga to terminate Mr. Robinson's employment based on the June 16, 2022, secure floor violation.

45.     Upon learning this information, Mr. Robinson requested use of intermittent FMLA for the remainder of the day until Tuesday July 5, 2022,

to manage his anxiety.

46.    On July 1, 2022, Mr. Robinson received an email request for a call back from Luis Maga. When Mr. Robinson called Mr. Maga back, Mr. Maga was unavailable. When Mr. Maga returned Mr. Robinson's call, Mr. Maga stated that Mr. Robinson had been terminated from the company due to a secure floor violation.

47.    Following this conversation, Mr. Robinson received an email from Ms. Urban confirming his termination.

48.    During Mr. Robinson's employment his work performance was satisfactory. However, throughout his employment with MAXIMUS, MAXIMUS paid Mr. Robinson less than his Caucasian co-workers who were in equal positions, denied Mr. Robinson numerous promotion and transfer opportunities, and eventually terminated Mr. Robinson's employment due to his race and in retaliation for complaints related to unequal pay and denied promotions.

## COUNT I
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Race Discrimination

49.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 48 of this

Complaint as though fully set forth herein.

50.    Plaintiff is an African American male.

51.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

52.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

53.    At all times material herein, Defendant employed Plaintiff.

54.    At all times material herein, Plaintiff's coworkers discriminated against Plaintiff because of his race.

55.    Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

56.    However, Plaintiff, was subjected to discrimination because of his race through disparate treatment, demeaning comments and behavior, and other discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents as more particularly alleged hereinabove.

57.    Plaintiff believed that his coworkers' offensive acts and statements materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Plaintiff's coworkers' offensive acts materially altered the terms and conditions of Plaintiff's employment.

58.    The Plaintiff did not welcome the offensive acts, harassment, disparate treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

59.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about Plaintiff's coworkers' discrimination of Plaintiff, but did not take prompt remedial action to eliminate the discrimination.

60.    Defendant violated Title VII by subjecting Plaintiff to discrimination because of his race by failing to promptly correct Plaintiff's

coworkers' discrimination once it learned of it.

61.    Further, Defendant failed to prevent and promptly correct this illegal workplace discrimination. Defendant's supervisors, managers, and Human Resources personnel who learned about the objectionable workplace conduct and discrimination of Plaintiff by his supervisors failed to promptly take steps to correct the conduct of his supervisors who, like Plaintiff, were under their supervision, management, and control.

62.    Instead, as more particularly alleged hereinabove, Defendant's personnel further perpetuated the discrimination by terminating Plaintiff's employment on July 1, 2022.

63.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination and disparate treatment of Plaintiff, deprived him of statutory rights under Title VII.

64.    Defendant's actions constitute discrimination in violation of Title VII.

65.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has

suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

WHEREFORE, the Plaintiff, QUINTON F. ROBINSON, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, MAXIMUS INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory

measures to overcome the effects of the hostile work environment and discrimination he has endured;

C.     Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.     Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

66.    Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

67.    Plaintiff is an African American male.

68.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

69.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

70.    At all times material herein, Defendant employed Plaintiff.

71.    Defendant subjected Plaintiff to adverse employment actions in retaliation for filing a formal grievance regarding discrimination and unequal pay which included terminating his employment.

72.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more

particularly described hereinabove, constitute unlawful retaliation.

73.    As his employer, Defendant was obligated to guard against the harassment, disparate treatment, discrimination, and retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from harassment and discrimination in the workplace.

74.    Defendant violated Title VII by, among other things, failing to promptly correct the disparate treatment, discriminatory and retaliatory conduct toward Plaintiff once it learned of it.

75.    Plaintiff, by being subjected to this disparate treatment, discrimination, and retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

76.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the disparate treatment, discrimination, and retaliation of Plaintiff, deprived him of statutory rights under Title VII.

77.    As a direct, proximate, and foreseeable result of Defendant's

aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

WHEREFORE, the Plaintiff, Quinton F. Robinson, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, MAXIMUS INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.     Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff based on his complaints regarding discrimination and unequal pay;

B.     Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related

benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the hostile work environment and retaliation he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

<u>**COUNT III**</u>
**VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT**
**FMLA Retaliation**

78.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

79.    The prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA, 29 U.S.C. § 2615, apply to employers with respect to eligible employees taking, or attempting to take, leave under the FMLA.

80.    Under the FMLA, it is unlawful for an employer to take action against an employee because the employee exercises his FMLA rights. The FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual" for asserting her rights under the FMLA. 29 U.S.C. § 2615(a)(2).

81.    As more particularly alleged hereinabove, at all times material herein, Plaintiff was and is an "eligible employee" and Defendant was and is an "employer" within the meaning of the FMLA.

82.    As more particularly alleged hereinabove, Plaintiff qualified for leave under the FMLA.

83.    Plaintiff engaged in statutorily protected activity by exercising his rights to take leave under the FMLA.

84.    Through the Defendant's policy, the Defendant knew or should have known that Plaintiff was exercising his rights under the FMLA and was aware of Plaintiff's right to protected leaves of absence under the FMLA.

85.    Defendant violated the FMLA and retaliated against Plaintiff by, among other things; terminating Plaintiff's employment under false pretenses.

86.    Defendant terminated Plaintiff in retaliation for his protected activity.

87.    A causal connection exists between Plaintiff taking FMLA leave and Defendant's adverse employment actions and ultimate decision to terminate Plaintiff's employment.

88.    As more particularly alleged herein above, Defendant terminated Plaintiff without a legitimate nondiscriminatory basis for the decision.

89.    Defendant's aforementioned actions and omissions constitute violations of the FMLA.

90.    As a direct and proximate result of Defendant's retaliatory and

unlawful conduct, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to, lost wages, salary, employment benefits and other compensation lost by reason of Defendant's unlawful conduct in violation of the FMLA and, as such, is entitled to legal relief.

91.   In addition, Plaintiff is entitled to appropriate equitable relief including employment, reinstatement, and/or promotion. 29 U.S.C. § 2617(a)(1)(B).

92.   Further, Plaintiff is entitled to liquidated damages as Defendant did not act in good faith and had no reasonable grounds for believing that it was not violating the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

93.   Finally, Plaintiff is entitled to reasonable attorney's fees, reasonable expert witness fees, and other costs of the action. 29 U.S.C. § 2617(a)(3).

WHEREFORE, the Plaintiff, QUINTON F. ROBINSON, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, MAXIMUS, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant violated the FMLA and engaged in unlawful conduct and employment

practices prohibited by the FMLA in that Defendant discharged, discriminated against and/or retaliated against Plaintiff for taking leave under the FMLA and exercising his rights under the FMLA;

B.    Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of the FMLA, and to otherwise make him whole for any losses suffered because of such unlawful employment practices in violation of the FMLA;

C.    Award Plaintiff liquidated damages as recoverable under the FMLA and as consistent with law;

D.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

E.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

F.    Grant such other and further relief as this Court may deem equitable, just, and proper.

<u>COUNT IV</u>
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT,**
**FLORIDA STATUTES §§ 760.01-11**
**Racial Discrimination**

94.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

95.     Plaintiff is an African American male.

96.     At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

97.     Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

98.     At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

99.     At all times material herein, Plaintiff's coworkers harassed and

discriminated against Plaintiff because of his race.

100.   Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

101.   Plaintiff believed that his coworkers' offensive acts materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Plaintiff's coworkers' offensive acts materially altered the terms and conditions of Plaintiff's employment.

102.   Plaintiff did not welcome the discrimination or disparate treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

103.   At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about Plaintiff's supervisors' discrimination of Plaintiff, but did not take prompt remedial action to eliminate the discrimination.

104.   Defendant violated the FCRA by, among other things, failing to promptly correct the disparate treatment and discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to disparate

treatment and discrimination because of his race.

105.   Plaintiff, by being subjected to this disparate treatment and discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

106.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the disparate treatment and discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

107.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

WHEREFORE, the Plaintiff, QUINTON F. ROBINSON, requests trial

by jury of all issues so triable as of right, demands judgment against the Defendant, MAXIMUS INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other

economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

<u>**COUNT V**</u>
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT,**
**FLORIDA STATUTES §§ 760.01-11**
**Retaliation**

108.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

109.    Plaintiff is an African American male.

110.    At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

111.    Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock

company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

112. At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

113. Defendant subjected Plaintiff to adverse employment actions in retaliation for filing a formal grievance regarding discrimination and unequal pay which included terminating his employment.

114. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

115. As his employer, Defendant was obligated to guard against the disparate treatment, discrimination, and retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

116. Defendant violated the FCRA by, among other things, failing to promptly correct the disparate treatment, discriminatory and retaliatory conduct toward Plaintiff once it learned of it.

117.    Plaintiff, by being subjected to this disparate treatment, discrimination, and retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

118.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the disparate treatment, discrimination, and retaliation of Plaintiff, deprived him of statutory rights under the FCRA.

119.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

WHEREFORE, the Plaintiff, QUINTON F. ROBINSON, requests trial by jury of all issues so triable as of right, demands judgment against the

Defendant, MAXIMUS INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff based on his continued complaints related to the discriminatory conduct of his coworkers and unequal pay;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's retaliation against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other

economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Date this 28th day of April 2023.

_/s/ Jason W. Imler, Esq_____
Jason W. Imler
Florida Bar No. 1004422
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Attorneys for Plaintiff